[No. 42878. En Banc. May 16, 1974.]

YOUNG AMERICANS FOR FREEDOM, INC., *et al., Respondents,*
v. SLADE GORTON *et al., Appellants.*

*Slade Gorton, Attorney General, Malachy R. Murphy, Deputy, Thomas F. Carr, Rodney Carrier, Robert F. Hauth, and James M. Vache, Assistants, Smith Troy, Prosecuting Attorney, Riddell, Williams, Voorhees, Ivie & Bullitt and Stimson Bullitt, for appellants.*

*Davis, Wright, Todd, Riese & Jones and Richard A. Derham, for respondents.*

FINLEY, J.—Appellants Gorton and Troy are joined by intervenors Public Disclosure Commission and the League of Women Voters in appealing a declaratory judgment of the Thurston County Superior Court. The instant case was consolidated with the two cases decided in *Fritz v. Gorton,* 83 Wn.2d 275, 517 P.2d 911 (1974), and Bare v. Gorton et al., Cause No. 42879. In the instant case, the trial judge

ruled section 20, RCW 41.17.200,[1] regulating the lobbying campaigns of grass roots organizations, unconstitutional.

[1]"42.17.200 Grass roots lobbying campaigns. (1) Any person who has made expenditures, not reported under other sections of this chapter, exceeding five hundred dollars in the aggregate within any three month period or exceeding two hundred dollars in the aggregate within any one month period in presenting a program addressed to the public, a substantial portion of which is intended, designed, or calculated primarily to influence legislation shall be required to register and report, as provided in subsection (2), as a sponsor of a grass roots lobbying campaign.

"(2) Within thirty days after becoming a sponsor of a grass roots lobbying campaign, the sponsor shall register by filing with the commission a registration statement. in such detail as the commission shall prescribe, showing:

"(a) The sponsor's name, address, and business or occupation, and, if the sponsor is not an individual, the names, addresses and titles of the controlling persons responsible for managing the sponsor's affairs.

"(b) The names, addresses, and business or occupation of all persons organizing and managing the campaign, or hired to assist the campaign, including any public relations or advertising firms participating in the campaign, and the terms of compensation for all such persons.

"(c) The names and addresses of all persons contributing to the campaign, and the amount contributed by each contributor.

"(d) The purpose of the campaign, including the specific legislation, rules, rates, standards or proposals which are the subject matter of the campaign.

"(e) The totals of all expenditures made or incurred to date on behalf of the campaign, which totals shall be segregated according to financial category, including but not limited to the following: advertising, segregated by media and, in the case of large expenditures (as provided by rule of the commission), by outlet; contributions; entertainment, including food and refreshments; office expenses including rent and the salaries and wages paid for staff and secretarial assistance, or the proportionate amount thereof paid or incurred for lobbying campaign activities; consultants; and printing and mailing expenses.

"(3) Every sponsor who has registered under this section shall file monthly reports with the commission, which shall be filed by the tenth day of the month for the activity during the preceding month. The reports shall update the information contained in the sponsor's registration statement and in prior reports and shall show contributions received and totals of expenditures made during the month, in the same manner as provided for in the registration statement.

"(4) When the campaign has been terminated, the sponsor shall file a notice of termination with the final monthly report, which notice shall state the totals of all contributions and expenditures made on

Respondent Young Americans for Freedom (YAF) is a Delaware corporation with affiliated membership groups located throughout the United States whose activities focus principally upon high school and college campuses. Respondent Jeffrey Kane is a member of a nonincorporated association affiliated with the YAF in the state of Washington. The YAF engages in various activities in attempting to make known its stand upon divergent public issues. These activities include the publication of a magazine, distribution of position or issue papers, and sundry other activities designed to further loyalty and adherence to conservative political views. The YAF obtains its operating funds from membership dues, subscriptions to its magazine, personally solicited contributions, and the renting of its mailing list for direct mail solicitations. The YAF also engages in campaigns which are designed to influence the legislature by urging that various members and constituents contact their elective representatives as a broad show of public support or dissatisfaction with pending or proposed legislation.

Excluding expenditures of less than specified amounts within the prescribed time periods, section 20 requires reporting of grass roots campaign activity which is designed, directly or indirectly, to influence legislation. If the specified amounts are exceeded, section 20 includes the requirement that contributions and the names and addresses of all contributors be reported. Respondent YAF complains that this provision would require the disclosure of its entire membership list, as well as the identities of those persons contributing to a specific campaign. This disclosure, it is contended, would violate the YAF members' first amendment rights of association and their right of privacy.

The pivotal question in this case is the proper interpretation of section 20. We can agree with the contention of YAF that a required disclosure of its membership would be an impermissible and unconstitutional intrusion

behalf of the campaign, in the same manner as provided for in the registration statement. [1973 c 1 § 20 (Initiative Measure No. 276 § 20).]"

upon its members' associational freedoms and the right to privacy. *NAACP v. Alabama,* 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958). However, the YAF's interpretation of section 20 is a strained one. This court is under no obligation to construe a statute to unnecessarily render it unconstitutional. *See State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 508 P.2d 149 (1973); *cf. United States v. Rumely,* 345 U.S. 41, 45, 97 L. Ed. 770, 73 S. Ct. 543 (1953).

■ The clear and basic intent of initiative section 20 is to require disclosure of (1) those individuals and organizations who, directly or indirectly, attempt to influence governmental decision making, and (2) the sums expended in such efforts. In our opinion, the section does not mandate the reporting of every YAF expenditure nor does it require the disclosure of the entire membership list. Section 20 was designed not to inhibit the free expression of ideas, but to inform the electorate of the source and sponsorship of persuasional influences which are designed to sway and procure their political interest, allegiance, and support. As we interpret section 20, it requires a grass roots organization to report expenditures exceeding the *de minimis* amounts which are spent in furtherance of a *specific* campaign. *See* section 20(2)(c)-(d). By way of illustration, section 20 would require a grass roots organization to report qualifying expenditures incurred in a campaign which urged the support or defeat of an initiative measure directed to the legislature. Reporting would not be required when the subject campaign does not have as its objective the support or rejection of specific legislation.[2] Thus, no reporting is required of the YAF unless it seeks to affect the disposition of *specific* pending or proposed legislation.

■ Specificity is likewise the key to section 20(2)(c) which mandates the disclosure of campaign contributors and their donations. Contrary to the assertions of the YAF, this section *does not* require the disclosure of its member-

[2] We use the term "legislation" herein generically to also include pending or proposed rules, rates, standards or proposals. *See* section 20(2)(d), note 1, *supra.*

ship lists. If a member or nonmember contributes to a past, present or future YAF campaign which has as its objective the passage or failure of *specific* legislation, then the reporting of the contribution and its donor is required. If, however, the YAF does not receive funds earmarked for a specific campaign, but expends reportable amounts from its general funds, then there is no need to divulge the names and addresses of the membership. In this instance, the members have only contributed dues to the organization, but not to a *specific* campaign. In instances where the YAF receives funds identified or earmarked for expenditure in a campaign which is directed at specific pending or proposed legislation, it is required to report the contributions in accordance with section 20(2)(c). Hence by definition, section 20 requires the disclosure of *contributors*, as distinguished from members, and therefore, does not violate the rule of *NAACP v. Alabama*, as an impermissible impingement upon constitutional rights. *See United States v. National Comm. for Impeachment*, 469 F.2d 1135 (2d Cir. 1972); *American Civil Liberties Union, Inc. v. Jennings*, 366 F. Supp. 1041 (D.D.C. 1973) (three-judge panel upheld the constitutionality of the Federal Elections Campaign Act). *See also Pichler v. Jennings*, 347 F. Supp. 1061, 1068 (S.D.N.Y. 1972).

Section 20 must be viewed with the other sections of Initiative 276 (codified as RCW 42.17) as a part of a matrix or program designed to ensure that public officials and the electorate are informed of the sponsors of campaigns and lobbying efforts which seek to affect, directly or indirectly, governmental decision making. In *Fritz v. Gorton*, 83 Wn.2d 275, 302-11, 517 P.2d 911 (1974), we upheld the initiative sections which require reporting and disclosure of *direct* lobbying activities by lobbyists and their employers. The YAF concedes that it is required to file appropriate reports under those sections, but contends that its *indirect* lobbying activities may not be subjected to the requirements of section 20. To strike down this portion of the initiative would leave a loophole for indirect lobbying

without allowing or providing the public with information and knowledge re the sponsorship of the lobbying and its financial magnitude. In affirming the constitutionality of the Federal Regulation of Lobbying Act of 1946, 2 U.S.C. §§ 261-70 (1970), in *United States v. Harriss*, 347 U.S. 612, 620, 98 L. Ed. 989, 74 S. Ct. 808 (1954), the United States Supreme Court noted,

> [t]he legislative history of the Act makes clear that, at the very least, Congress sought disclosure of such direct pressures, exerted by the lobbyists themselves or through their hirelings *or through an artificially stimulated letter campaign.*

(Italics ours.) *See also United States v. Harriss, supra* at 620 n.10. Thus, it seems abundantly clear, and we are convinced, that the right of the public to be informed is paramount to any inconvenience that reporting under section 20 may cause respondent.

Respondent also asserts the invalidity of Initiative 276 under Const. art. 2, § 19, and challenges the validity of initiative section 40(4), RCW 42.17.400(4). These issues as well as respondent's prayer for costs and attorneys fees were dispositively addressed in *Fritz v. Gorton, supra.*

For the above indicated reasons, the Superior Court should be reversed as to section 20, but otherwise affirmed. It is so ordered.

HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTEN-BACH, JJ., concur.

HALE, C.J., concurs in the result.

ROSELLINI, J. (dissenting)—I dissent. I would hold the act unconstitutional and the reasons therefor are stated in my dissent in *Fritz v. Gorton*, 83 Wn.2d 275, 517 P.2d 911 (1974).

HUNTER, J., concurs with ROSELLINI, J.

Petition for rehearing denied August 1, 1974.