[No. 43528.    En Banc.    February 18, 1976.]

THE STATE OF WASHINGTON, ET AL, *Appellants*, V. THE (1972) DAN J. EVANS CAMPAIGN COMMITTEE, ET AL, *Respondents*.

*R. R. Greive*, pro se, and *Greive & Law*, for appellants.

*Davis, Wright, Todd, Riese & Jones*, by *Edward N. Lange* and *Richard A. Derham*, for respondents.

FINLEY, J.—This is an appeal from an order of the Thurston County Superior Court granting defendants' motion

for a partial summary judgment. We have concluded there are no material issues of fact, consequently, we affirm the trial court.

Plaintiff originally requested the Attorney General to bring an action to force the disclosure of the names of persons or organizations who allegedly contributed to the Dan Evans Committee subsequent to the effective date of Washington's campaign financial disclosure act, Initiative 276.[1] The Attorney General declined to bring any action under the act, and plaintiff initiated this citizen's action, ostensibly pursuant to RCW 42.17.400.

Following the reelection of Governor Evans in 1972, the Dan Evans Committee—whose primary purpose was to support the reelection of Governor Evans—retained in a bank account surplus campaign funds in the amount of $32,575.96. From November 8, 1972, to December 31, 1973, the Dan Evans Committee disbursed approximately $13,577.97. A very substantial portion of the moneys were expended for travel and hotel expenses for various individuals, including Governor and Mrs. Evans, and for postage, Christmas cards, dinners, and entertainment. Insofar as relevant to plaintiff's contentions in the instant case, the following specific expenditures were made: (1) $1,322.95 for the 1972 campaign workers' party; (2) $1,502.36 for the Snohomish County Governor's dinner; (3) $2,287.12 for Christmas cards and envelopes; (4) $500 to the Washington Republican Club, which represented Governor Evans' contribution to the Early Birds Fund of the Washington Republican Central Committee.[2]

In order to formalize the management of these funds, a declaration of trust was made on December 18, 1973. The remaining funds were placed in a trust account under the name "Dan Evans Trust." The terms of the trust provide

[1] The effective date of RCW 42.17 was January 1, 1973.

[2] The Washington Republican Central Committee is "an organization formed to receive contributions and make expenditures on behalf of candidates and is a reporting political committee under Initiative 276." Defendant's Brief at 9.

that funds may be disbursed to pay travel and other expenses of a noncampaign and nongovernmental nature; *i.e.*, reasonable and necessary expenditures not properly chargeable as state expenses incurred by Governor and Mrs. Evans in connection with his position as a public official. The terms of the trust further provide that "funds shall not be used to pay political campaign expenses." Upon the termination of the trust, either by declaration of the trustees or in the event Governor Evans no longer remains in public office the remaining funds are to be distributed for specified eleemosynary purposes.

The focus of plaintiff's argument is that the Dan Evans Committee, although exempt from the act's reporting requirements prior to January 1, 1973, became a "political committee" by accepting contributions and making expenditures in 1973 after it had achieved its purpose in obtaining the reelection of Governor Evans. Therefore, plaintiff claims that the Dan Evans Committee is required to file a report of expenditures and contributions with the Public Disclosure Commission as required by the act.[3]

With respect to this claim, plaintiff contends that material issues of fact exist whether the Dan Evans Committee became a political committee in 1973 because (1) it accepted contributions in 1973 from Mr. Johanson and Mr. Bain, (2) it received additional donations in 1973 that allegedly were returned to the donors, (3) it expended sums in 1973 for the 1972 campaign workers party, for Christmas cards, et cetera, and (4) it contributed $500 to the Early Birds fund. Plaintiff also contends that the Dan Evans trust is a political committee because the trust is a sham, revokable at the will of trustees who are friends of or political associates of Governor Evans.

Plaintiff's allegation that Mr. Johanson and Mr. Bain contributed in 1973 to the Dan Evans Committee is not set out and presented to the court in any affidavit of record. Rather, plaintiff merely makes the allegation in his brief on this appeal. Rebuttal affidavits of Mr. Johanson and Mr.

---

[3] RCW 42.17.080-.090.

Bain state that they contributed $500 in 1973 to the Early Birds Fund of the Washington Republican Central Committee. This fact is further supported by the affidavit of the chairman of the Washington Republican Central Committee.

■ By affidavit, plaintiff states that his *belief* that contributions were made by unknown donors to the Dan Evans Committee after the effective date of the act is based on "conversations with news and T.V. reporters."

CR 56(e) prescribes the nature of the affidavits required to be submitted in order to substantiate the existence of material issues of fact. It provides in part:

> Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and *shall show affirmatively* that the affiant is competent to testify to the matters stated therein.

(Italics ours.)

It is apparent that the allegations are not based upon personal knowledge and do not provide facts that would be competent evidence that a trial court should consider in ruling on a motion for partial summary judgment. *Welling v. Mount Si Bowl, Inc.,* 79 Wn.2d 485, 489, 487 P.2d 620 (1971); *Charbonneau v. Wilbur Ellis Co.,* 9 Wn. App. 474, 512 P.2d 1126 (1973).

With respect to the expenditures made by the Dan Evans Committee for the 1972 campaign workers party, Christmas cards, et cetera, plaintiff argues that the committee became a "political committee" because the moneys were expended to benefit Governor Evans' political career.

By affidavit, plaintiff stated that he *"believes"* that Governor Evans currently is a candidate for public office. The affiant states that this fact is based on a statement made by the Governor at the 1974 Republican State Convention as reported by a news reporter. On the other hand, Governor Evans, by affidavit, stated that he was not a candidate for election to any public office during the period from January 1, 1973, to September 30, 1974. First, it is apparent from the

record that plaintiff's allegation is not based on personal knowledge, but upon evidence, hearsay in its nature. Therefore, this allegation does not create a material issue of fact. Secondly, it is clear from the record that Governor Evans during this period of time did not fall within the definition of a "candidate" as defined by RCW 42.17.020 (5).[4] There is no evidence in the record to indicate that the expenditures were made "with intent to promote [Governor Evans'] candidacy for office," or that Governor Evans publicly had announced his candidacy or filed for office. Thus, these expenditures by the Dan Evans Committee during 1973 could not have resulted in transforming it into a "political committee" because the moneys were not expended to promote Governor Evans' *candidacy* for office.

Plaintiff finally contends that the committee became a "political committee" because it contributed $500 to the Early Birds Fund of the Washington Republican Central Committee.

RCW 42.17.020 (22) defines political committee to mean

> any person (except a candidate or an individual dealing with his own funds or property) having the expectation of receiving contributions or making expenditures in support of, or opposition to, any candidate or any ballot proposition.

Initiative 276 was designed to inform the public and its elected representatives of expenditures made by persons[5] whose purpose is to influence or affect the decision-making

---

[4]RCW 42.17.020 (5) defines the term candidate to mean "any individual who seeks election to public office. An individual shall be deemed to seek election when he first:

"(a) Receives contributions or makes expenditures or reserves space or facilities with intent to promote his candidacy for office; or

"(b) Announces publicly or files for office."

[5]RCW 42.17.020 (19) broadly defines the term "person" to include "an individual, partnership, joint venture, public or private corporation, association, federal, state or local governmental entity or agency however constituted, candidate, committee, political committee, political party, executive committee thereof, or any other organization or group of persons, however organized."

processes of government. See *Young Americans for Freedom v. Gorton*, 83 Wn.2d 728, 733, 522 P.2d 189 (1974); *Fritz v. Gorton*, 83 Wn.2d 275, 310, 517 P.2d 911 (1974); *cf.* Comment, *Financial Disclosure in Washington: Election Campaigns under Initiative No. 276*, 11 Willamette L.J. 99 (1974). By its definition the legislature provided .a skeletal outline of the salient characteristics of a political committee. The definition, though, was not drafted to ensnare indiscriminately all persons seeking to influence governmental decision making by their contributions given in support of or opposition to candidates or ballot propositions.

■ A fundamental guide to statutory construction is that the spirit or intention of the law prevails over the letter of the law. *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 512 P.2d 1094 (1973). Statutory provisions are interpreted in a manner so as to avoid strained or absurd consequences which could result from a literal reading. *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

In interpreting this legislation we must keep in mind the purpose of Initiative 276 as it relates to the basic function of persons who should properly be brought within the ambit of the term "political committee." The act seeks to ferret out, as we previously have mentioned, those whose purpose is to influence the political process and subject them to the reporting and disclosure requirements of the act in the interest of public information.

■ In the instant case, the Dan Evans Committee made a single contribution of $500 to the Early Birds Fund of the Washington Republican Central Committee, a political committee obligated to disclose the contribution. The record reflects no expenditures for the purpose of supporting or opposing a specific candidate or ballot proposition. No other contributions of a similar nature were made. There is no competent evidence in the record to indicate that the Dan Evans Committee solicited, received, or even had the expectation of receiving contributions to be used in support of or in opposition to candidates or ballot propositions. To

require reporting and disclosure by the Dan Evans Committee or other persons who make a single contribution to a political committee under these circumstances (in the absence of other qualitative facts) would result in an unnecessary and unreasonable duplication and extension of the act's detailed and somewhat lengthy reporting requirements. Where the surrounding facts and circumstances indicate that *the primary or one of the primary* purposes of the person making the contribution is to affect, directly or indirectly, governmental decision making by supporting or opposing candidates or ballot propositions, then that person becomes a "political committee" and is subject to the act's disclosure requirements. *See* Attorney General Opinion, June 8, 1973. The *primary* purpose of the Dan Evans Committee was not to influence the political process by supporting or opposing candidates or ballot propositions through expenditures of its funds, but to pay for miscellaneous expenses incurred by Governor Evans and his staff in connection with his position as a public official. Plaintiff's contention to the contrary creates no material issue of fact.

Even assuming for the purposes of argument that the Dan Evans Committee was a political committee, plaintiff has raised no material issues of fact. It voluntarily reported all expenditures in its statement filed with the Public Disclosure Commission on January 31, 1974. There is no competent evidence in the record to support plaintiff's allegation that the Dan Evans Committee received contributions subsequent to the effective date of Initiative 276. Not having received any contributions it would have no duty to report them.

The judgment of the trial court is affirmed.

It is so ordered.

STAFFORD, C.J., HAMILTON and UTTER, JJ., and RYAN, J. Pro Tem., concur.

ROSELLINI, J. (concurring in the result)—The majority opinion proceeds upon the assumption that, under the pub-

lic disclosure act (RCW 42.17.090), a political committee established to support the candidacy of a particular office seeker loses its identity as such when the election occurs and becomes no longer subject to the provisions of this initiative, unless new contributions are received or promotional expenditures are made thereafter. In other words, the majority assumes that the act does not apply to a committee formed before its effective date if the candidate which it supports has already been elected, and no further contribution has been received or promotional expenditure made.

I cannot agree with this assumption for two reasons: First, the act is expressly made applicable to committees in existence on its effective date. (RCW 42.17.040; RCW 42.17.080(1)) Second, the act imposes upon political committees duties which are to be performed after the election is held. RCW 42.17.080(2)(b) requires that a report be made within 10 days after the date of a primary election and within 21 days after the date of all other elections. The section provides that this report shall be the final report only if all obligations are paid, the campaign fund is closed, the campaign is concluded in all respects, and the committee has ceased to function and has dissolved. The section requires the filing of a final report after the last debt or obligation is paid; and RCW 42.17.080(1) requires the reporting of the disposition made of any surplus of contributions over expenditures.

RCW 42.17.090 also provides, in subsection (1)(b), that each report required under the chapter shall list the name and address of each person who has made one or more contributions during the period covered. Since a final report is required when the committee is dissolved, it follows that the committee must report all contributions received and expenditures made (including the disposition of surplus), after the election and upon its dissolution.

The act makes special provision for initial reports by political committees formed before its effective date. RCW 42.17.080(1) provides, *inter alia*:

In addition to any statement of organization required under RCW 42.17.040, the initial report of the campaign treasurer of such a political committee in existence at the time this chapter becomes effective need include only:

(a) The funds on hand at the time of the report, and

(b) Such other information as shall be required by the commission by regulation in conformance with the policies and purposes of this chapter.

RCW 42.17.040 requires a political committee supporting a single candidate to give the organization's name and address, the names and addresses of its affiliates and its officers or leaders, its treasurer and its depository, the name, office sought, and party affiliation of the candidate, the distribution to be made of any surplus funds, and such other information as the commission may by regulation prescribe, in keeping with the policies and purposes of the chapter.

The act declares that its provisions are to be liberally construed to effectuate its policies and purposes (RCW 42.17.920). Those policies and purposes are set forth at length in RCW 42.17.010. Among these is the following:

(10) That the public's right to know of the financing of political campaigns and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.

Reading all of these provisions together, I cannot escape the conclusion that the people intended the provisions of this initiative to apply to all·political committees (that is, committees formed to support candidates or parties or ballot propositions) which had not been *dissolved* prior to its effective date. The Dan Evans Committee was such an organization. It did not lose its identity as such simply because its candidate was elected. It remained a campaign committee, even though the campaign was over, until its affairs were concluded and its surplus funds were disposed of.

Thus, I disagree with the majority in its conclusion that the Dan Evans Committee was not required to report its receipts and expenditures after the effective date of the

public disclosure act. However, the record contains a report voluntarily made by the committee, declaring that no contributions had been received after the effective date of the act (RCW 42.17.080 only requires that the amount of funds on hand be disclosed under these circumstances.), showing the amount on hand at the beginning of the period reported, the expenditures made, and the disposition made of the remainder of the surplus, which was paid into a "Dan Evans Trust Fund" when the committee was dissolved.

The plaintiff has not shown any of the facts stated in this report to be untrue. If contributions were received and returned to the donors, the record does not disclose that fact. Thus, on the record before us, it appears that the committee has, while disclaiming any duty to do so, substantially complied with the requirements of the act. Having shown the trial court no facts to the contrary, the plaintiff cannot successfully maintain that the court erred in granting the respondents' motion for summary judgment. He was given an opportunity to engage in discovery proceedings in the court below but admits that he failed to take advantage of this right, through no fault of the respondents. He cannot controvert the respondents' factual showing with bare allegations.

The plaintiff makes a contention (not discussed in the majority opinion) that the Dan Evans Trust Fund is a mere sham and is in fact a continuation of the Dan Evans Campaign Committee. The committee had the right to dissolve itself under the act, after its last obligation was paid, and to dispose of the surplus as it saw fit. The trust fund is not available for campaign purposes, as I read the declaration of trust, within the meaning of RCW 42.17.020 (22), defining a "political committee."

For the above reasons, I agree that the action was properly dismissed.

HUNTER, WRIGHT, and HOROWITZ, JJ., concur with ROSELLINI, J.