## PHIFER *v.* STATE OF MARYLAND

[No. 103, September Term, 1975.]

*Decided June 24, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Thomas A. Rymer* for appellant.

*Henry E. Dugan, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

Digges, J., delivered the opinion of the Court.

Maryland's Fair Election Practices Act is presently codified as Maryland Code (1957, 1976 Repl. Vol.), Art. 33, §§ 26-1 to -21.[1] Section 26-4 (a) of that enactment, among other things, makes it unlawful for a "political committee, or any of its members, to . . . disburse money" to promote any of the purposes for which the political committee exists or acts unless a chairman and a treasurer have been appointed and their names and addresses, as well as the names and addresses of the political committee's other principal officers, have been filed with the appropriate election board. As a result of paying the Prince Frederick Recorder, a weekly newspaper published in Calvert County, $126 to print a political advertisement, the defendant-petitioner, Mrs. Shirley Phifer, was found guilty in the Circuit Court for Calvert County (Bowen, J.) of violating § 26-4 (a). Her conviction was based on the premise that when she made the payment to the newspaper she was acting as a member of a "political committee" which had not filed the names and addresses of its principal officers with the proper election board. The issue which we must resolve is whether there was legally sufficient evidence to permit the trier of fact to conclude that the petitioner was a member of and acting on behalf of a political committee when she paid for the advertisement, which in turn depends on the more basic question of whether there was sufficient evidence that such a political committee had ever been formed. For the reasons hereafter related, we hold as a matter of law that there was insufficient evidence that such a political committee existed, and therefore the petitioner's conviction for violating § 26-4 (a) was improper and must be reversed.

The facts of this case, although somewhat intricate, are basically uncontroverted. The petitioner entertained certain deprecatory opinions with respect to State Senator Edward

---

1. The first statute regulating campaign financing was passed by the British Parliament in 1883, 46 & 47 Vict., c. 51. Maryland enacted its first such law in 1908. Laws of Maryland 1908, ch. 122. For a history and discussion of the several Maryland enactments, see Pettengill, *Regulation of Campaign Finance — The Maryland Experience*, 19 Md. L. Rev. 91 (1959).

T. Hall's legislative record and desired to air them in a local newspaper prior to a forthcoming election by way of either a letter to the editor or a quarter-page paid political advertisement. However, when drafted, her article turned out to be long enough to fill a half-page advertisement, costing more to print than she thought she could afford. After discussing the article with some friends, who suggested certain spelling and grammatical corrections, Mrs. Phifer gave her treatise to a member of the Democratic State Central Committee in the hope that the committee would publish at least part of it. Although the committee declined to sponsor any part of her article, Mrs. Phifer was not daunted and her resolve to make her opinions known hardened. As a result, she spoke to certain friends and relatives about helping her to pay the cost of a half-page advertisement, and several indicated a willingness to donate money even though they had not seen the article. According to Mrs. Phifer, her benefactors knew the subject of her writing, how she felt and supported her right to say what she believed.

The petitioner then met with Robert Smith, the managing editor of the Prince Frederick Recorder, to discuss placement of the advertisement in his newspaper. When the editor inquired as to whether she had investigated the statute regarding publication of paid political advertisements by individuals, Mrs. Phifer responded that she knew there was some such law but she was unaware of its particulars. Consequently, Mrs. Phifer, while still in Mr. Smith's presence, attempted to telephone the State Administrative Board of Election Laws, located in Annapolis, to find out exactly what the law required. When she was unsuccessful in contacting the board, Mr. Smith telephoned State Delegate Thomas A. Rymer in an effort to obtain the information; Delegate Rymer was not sure of the exact requirements, so he telephoned Willard A. Morris, the State Administrator of Election Laws. Mr. Morris advised Delegate Rymer that an individual placing a paid political advertisement had to include within it an "authority line" which stated his name and address. This information was

immediately relayed to the petitioner and as a result she appended such a line to her advertisement. In addition to the authority line, the petitioner, on her own initiative, decided to place at the top of the article the following statement: "This ad paid for through the donations of concerned citizens of Calvert County." Mrs. Phifer, in explanation, stated that the reason she wanted the advertisement to disclose she was not the only person paying for it was to avoid the appearance of a personal vendetta and to keep her creditors from getting the impression that she alone had enough money to pay for such an advertisement. However, in order to indicate that the advertisement was not being sponsored by any organized group or committee, but instead only by friends and relatives who agreed to donate money, the petitioner specifically instructed Mr. Smith to print the words "concerned citizens" in lower case rather than with capital letters. The petitioner gave the editor her personal check for $126 to pay for the advertisement, but asked that he not deposit it until she could either collect the donations she had been promised or arrange to cover the check herself.

After Mrs. Phifer and the editor parted company, Mr. Smith recalled that there was a group in the county known as "Concerned Citizens of Mutual" and so, in an attempt to prevent readers from concluding that that organization was sponsoring the advertisement, he transposed the sentence regarding financing from the top to the bottom of the advertisement and rewrote the sentence so that it read: "This ad financed through the contributions of citizens concerned over the future of Calvert County." These changes were made without the knowledge or concurrence of Mrs. Phifer.

Later, but before the advertisement was published, Mrs. Phifer was visited at her home by Dr. George J. Weems, who inquired as to whether she had collected enough money to cover the cost of the advertisement. When she replied that, besides $20 of her own funds which she expected to utilize, she had not yet received any money from anyone, the doctor handed her his check for $106.

Thereafter, on October 31, 1974, the advertisement

appeared in the Prince Frederick Recorder. Five days later Senator Hall was reelected, and, eight days after that, he caused a summons to be issued requiring the petitioner to appear in the District Court of Maryland, Fourth District, to answer the criminal charge that she had violated Article 33, §§ 26-4 (a) (disbursing money for a political committee which had not filed the names and addresses of its principal officers), 26-4 (b) (failing to report advertising expenses in excess of $51), and 26-17 (failing to disclose that the ad was a paid political advertisement). At trial before Judge Bowling in the district court, in addition to what we have already related, it was established that neither the petitioner nor the "citizens concerned over the future of Calvert County" registered or filed any reports with either the State Administrative Board of Election Laws or Calvert County's election board. Further, Mrs. Phifer testified that she had neither formed nor acted on behalf of any type of committee or organization; rather, the petitioner stated, she had acted solely for herself. The district court acquitted the petitioner of violating § 26-17, but convicted her of violating both §§ 26-4 (a) and 26-4 (b) and imposed a fine of $100 plus costs. Mrs. Phifer took an appeal to the Circuit Court for Calvert County where, in her *de novo* trial, she agreed to be tried by the court without a jury on the basis of the record established in the district court. Although the circuit court found the petitioner innocent of violating § 26-4 (b), she was again found guilty of violating § 26-4 (a); sentence was suspended generally. We granted certiorari.

Having journeyed through the facts, we now turn to an analysis of the term "political committee" as it is used in § 26-4 (a). That subsection specifically states that the phrase "political committee" is being employed as defined in Code (1957, 1976 Repl. Vol.), Art. 33, § 1-1 (a) (14).[2] *See also* § 1-1 (a). According to § 1-1 (a) (14), a "political committee" is

"any combination of two or more persons appointed by a candidate or any other person or formed in any

---

2. Maryland Code (1957, 1976 Repl. Vol.), Art. 33, § 26-4 (a) actually states that it is using the term "political committee" not only as it is defined

other manner which assists or attempts to assist in any manner the promotion of the success or defeat of any candidate, candidates, political party, principle or proposition submitted to a vote at any election."

It is, of course, self-evident that Mrs. Phifer is only one person and that for her to have been a member of a "political committee," as that term is defined in § 1-1 (a) (14), at least one other person must also have been a member. *Compare* § 1-1 (a) (14) *with* § 4D-1 (a). If the State failed to establish that there were one or more other members of the political committee of which Mrs. Phifer was alleged to have been a member, then it would logically follow that the State did not prove that such a political committee existed; and if the prosecution failed to establish the existence of the political committee of which the petitioner was alleged to have been a member, then it would also logically follow that the prosecution did not present legally sufficient evidence that Mrs. Phifer was acting as a member of that political committee when she paid for the advertisement. Consequently, we must now determine whether the State established that there was at least one member of the alleged political committee other than Mrs. Phifer.

The State's primary contention is that the petitioner was, when she paid for the advertisement, acting on behalf of a "political committee" having as members Mrs. Phifer and Dr. Weems. Since the sum total of what the State established with regard to Dr. Weems was that he made a financial "contribution" [3] to the petitioner's political cause,

---

in § 1-1 (a) (14), but also as it is defined in § 4D-1 (a). Section 4D-1 (a) states that

"[a]ny person or combination of two or more persons who expends $51 or more to organize, promote, or assist in any manner the write-in candidacy of any person or persons for any public office to be filled at a general election, is a political committee for the purposes of this article."

The § 4D-1 (a) definition of "political committee" is obviously inapplicable to the case before us, and the State does not urge otherwise.

**3.** Although the petitioner asserted that the $106 she received from Dr. Weems was a loan, Judge Bowen, in the circuit court, found as a fact that it

knowing of its nature, the question we must decide may be phrased as follows: does a person who contributes money to another person's political cause, knowing the nature of that cause, but who does nothing else with respect to it, combine with that second person to form a "political committee" as that term is defined in § 1-1 (a) (14)? Our answer to this question is in the negative. To read the statute — as the State urges us to do — to say that a person who merely makes a financial contribution to another person's political cause combines with the recipient to create automatically a political committee would generate innumerable political committees, many having only two members, and would astronomically expand the membership rolls of others. For example, it would follow from the State's position that a person who attended a political committee's crab feast, oyster or bull roast — even if he merely desired to hear what the speakers had to say or to enjoy the food and social atmosphere — would, if he paid an admission fee which included a political contribution, become a member of that political committee. Such a reading of the statute, in our opinion, goes far beyond what the Legislature intended. *Cf.* 59 Op. Att'y Gen. 282, 288-96 (1974). *See generally United States v. National Comm. for Impeachment*, 469 F. 2d 1135 (2d Cir. 1972); *American Civil Liberties Union, Inc. v. Jennings* 366 F. Supp. 1041 (D.D.C. 1973) (three-judge court), *vacated as moot sub nom. Staats v. American Civil Liberties Union, Inc.*, 422 U. S. 1030, 95 S. Ct. 2646, 45 L.Ed.2d 686 (1975); *In re Woodbury*, 174 App. Div. 569, 160 N.Y.S. 902 (1916), *aff'd mem.*, 220 N. Y. 675, 116 N. E. 1084 (1917); *In re Anti-Saloon League*, 120 Misc. 412, 198 N.Y.S. 605 (Sup. Ct.), *aff'd per curiam*, 207 App. Div. 870, 201 N.Y.S. 642 (1923), *rev'd sub nom. Vannier v. Anti-Saloon League*, 238 N. Y. 457, 144 N. E. 679 (1924); *Young Americans for Freedom, Inc. v. Gorton*, 83 Wash. 2d 728,

---

was a "contribution." While it is not altogether clear whether Judge Bowen was using the term "contribution" as it is defined in the dictionary or as it is more narrowly defined in Maryland Code (1957, 1976 Repl. Vol.), Art. 33, § 1-1 (a) (5), our decision in this case would be the same under either usage; for that matter, our view would not be different if the $106 had been a loan rather than a "contribution."

522 P. 2d 189 (1974); Federal Election Campaign Act Amendments of 1974, § 201 (a) (3), 2 U.S.C. § 431 (d) (Supp. IV, 1974); N.Y. Election Law §§ 467 (a) and 484-a (McKinney Supp. 1975). As we read the enactment, what the General Assembly did was to treat contributors to and members of political committees as separate classes, the former of which may overlap the latter but would not necessarily be entirely included within it. This intent is indicated in several provisions of the statute which deal with contributions. *See, e.g.,* §§ 26-6, -7, -9, and -11.[4] We conclude, therefore, that a person's contribution of financial support to another person's political cause [5] does not, by itself, create a sufficient nexus between the contributor and the recipient for it to be said that they combined to give birth to a § 1-1 (a) (14) "political committee." [6] Consequently, Dr. Weems cannot be counted as a member of the political committee of which the petitioner was alleged to have been a member; thus, we must peruse the record to determine if, aside from Dr. Weems, the State established that there was at least one other member.

At oral argument before this Court the State conceded, and we think properly so, that those persons who merely discussed the article with the petitioner and suggested spelling and grammatical corrections were not members of the political committee of which Mrs. Phifer was alleged to have been a member. Since the Democratic State Central Committee declined to sponsor any part of her article, those party officials certainly cannot be said to have become

---

**4.** Under § 26-7 (b) (1), for instance, the treasurer or subtreasurer of a political committee is not, absent a request, required to issue a "campaign contribution receipt" to a person who purchases a single ticket to a political crab feast for less than $51. Since such a purchase could be made in cash, *see* § 26-9 (b), the political committee may well not know who the purchaser was, yet, according to the State's position, he would be a member of the recipient political committee.

**5.** We note that § 26-9 places restrictions on the amount of money a person may contribute.

**6.** Although it is not necessary for our decision here, we note that it logically follows from what we have said that if Dr. Weems had contributed the $106 to a § 1-1 (a) (14) "political committee," rather than to one person, he still would not, by that act alone, have become a member of that political committee.

members of the alleged political committee. The next group which we will consider consists of those friends and relatives of Mrs. Phifer who, knowing the subject of the petitioner's article and how she felt, promised to donate money to help her pay the cost of the advertisement but who never actually made any contributions. However, since we have already concluded that Dr. Weems was not shown to have been a member of that political committee even though he actually contributed money, clearly those who only promised to contribute (and that was all they were shown to have done) cannot be considered to have become members of that political committee. An examination of the record discloses that the only person who was shown to have been in any way connected with Mrs. Phifer, and who has not already been eliminated as a possible member of the alleged political committee, is the newspaper editor, Mr. Smith. The editor discussed the placement of the advertisement with Mrs. Phifer, inquired as to whether she had examined the law with respect to the publication of paid political advertisements, telephoned Delegate Rymer in an attempt to determine the statutory requirements, and changed the wording and location of the advertisement. We think it apparent, however, that the activities engaged in by Mr. Smith were performed in the normal course of his occupation (which was not directly associated with political activity, but rather involved the sale of newspaper advertisements) and were not undertaken by him to promote Mrs. Phifer's political cause in a manner contemplated by the Fair Election Practices Act. Since the record discloses no other possible members of the political committee of which the petitioner was alleged to have been a member, we are forced to conclude that the State failed to establish that anyone other than Mrs. Phifer was a member; consequently, no such political committee, as defined in § 1-1 (a) (14), was shown to have existed. As already explained, that conclusion requires us to reverse the petitioner's conviction on the ground that there was legally insufficient evidence that Mrs. Phifer was acting as a member of a political committee when she paid for the advertisement.

Having come to this conclusion, we need not, and specifically do not, reach any of the other issues raised on this appeal, including those of constitutional dimension. For cases discussing such issues with respect to statutes similar to Maryland's Fair Election Practices Act, *see Buckley v. Valeo*, 424 U. S. 1, 96 S. Ct. 612, 46 L.Ed.2d 659 (1976); *United States v. National Comm. for Impeachment, supra; American Civil Liberties Union, Inc. v. Jennings, supra; Young Americans for Freedom, Inc. v. Gorton, supra.*

> *Judgment reversed and case remanded for a new trial.*
> *Costs to be paid by the County Commissioners of Calvert County.*