[No. 20027-9-II. Division Two. December 6, 1996.]

RICHARD PEACOCK, *Appellant*, v. PUBLIC DISCLOSURE COMMISSION, *Respondent*.

*Rhys A. Sterling,* for appellant.

*Christine O. Gregoire, Attorney General,* and *S. Kim O'Neal, Assistant,* for respondent.

BRIDGEWATER, J. — Richard Peacock appeals from a superior court decision affirming the Public Disclosure Commission's (PDC) declaratory order that his Cedar County Committee is a "grass roots lobbying campaign" that must comply with the PDC's registration and reporting requirements. We hold that the Committee's effort to distribute informational brochures and to gather signatures to create a new county from a part of King County is intended primarily to influence legislation and, as such, is a "grass roots lobbying campaign" subject to the PDC's disclosure requirements. We affirm.

Richard Peacock is vice-president of the Cedar County Committee, a nonprofit corporation formed for the purpose of creating a new county, Cedar County, out of a portion

of King County. In order to reach this goal, the Committee began a petition drive to gather signatures from registered voters in the subject area.[1] If enough signatures are obtained, the Committee will present the signed petitions to the Secretary of State, who will in turn present them to the Legislature to draft the legislation that will create the new county.

In February 1994, the Public Disclosure Commission notified the Committee that its effort to promote the creation of a new county was a "grass roots lobbying campaign" under RCW 42.17.200, and that it was therefore required to register and report under chapter 42.17 RCW if it exceeded the monetary threshold set forth in that statute. That statute provides, in pertinent part, the following:

> (1) Any person who has made expenditures, not reported by a registered lobbyist under RCW 42.17.170 or by a candidate or political committee under RCW 42.17.065 or 42.17.080, exceeding five hundred dollars in the aggregate within any three-month period or exceeding two hundred dollars in the aggregate within any one-month period in presenting a program *addressed to the public, a substantial portion of which is intended,* designed, or calculated *primarily to influence legislation* shall be required to register and report, as provided in subsection (2) of this section, as a sponsor of a *grass roots lobbying campaign.*

RCW 42.17.200 (emphasis added).

On appeal, Peacock challenges the PDC's interpretation and application of that statute. He contends that his Committee is not a grass roots lobbying campaign because its efforts are not addressed to the public and are not intended primarily to influence legislation. The formation of a new county, he argues, is a ministerial task triggered by the requisite number of signatures, a process without legislative discretion and therefore incapable of being influenced.

---

[1]The petition that citizens were asked to sign states at the top that it is "[f]or submission to the Legislature of the State of Washington President, State Senate and Speaker, House of Representatives."

He also argues that his Committee cannot be impacting legislation because there is no proposed or pending legislation that specifically regards the new county.

When reviewing agency orders in adjudicative proceedings, the appellate court applies the standards of the Washington Administrative Procedure Act directly to the record that was before the agency.[2] "On issues of law, we apply the error of law standard of review, permitting us to substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers."[3] When the agency has expertise in a specialized field of law and has quasi-judicial functions in that field, we accord substantial weight to its construction of statutory words, phrases and legislative intent.[4] The party asserting that an agency's order is invalid has the burden of demonstrating its invalidity.[5] Only if this court determines that the appellant has been substantially prejudiced by the agency's action may we grant relief.[6]

Our primary objective in interpreting a statute is to ascertain and give effect to the Legislature's intent as manifested in the statute's express language.[7] Legislative

---

[2]*Tapper v. State Employment Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993), (citing *Macey v. Department of Employment Sec.*, 110 Wn.2d 308, 312, 752 P.2d 372 (1988) (remaining citations omitted)).

[3]*Valentine v. Department of Licensing*, 77 Wn. App. 838, 844, 894 P.2d 1352, *review denied*, 127 Wn.2d 1020 (1995) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)).

[4]*Overton v. Washington State Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981), (citing *Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 552 P.2d 674 (1976); *Short v. Clallam County*, 22 Wn. App. 825, 593 P.2d 821 (1979)).

[5]RCW 34.05.570(1)(a).

[6]RCW 34.05.570(1)(d).

[7]*Palmer v. Department of Revenue*, 82 Wn. App. 367, 372, 917 P.2d 1120 (1996) (citing *Martin v. Meier*, 111 Wn.2d 471, 479, 760 P.2d 925 (1988)).

intent is derived from the statutory context as a whole.[8] Accordingly, we interpret RCW 42.17.200 in light of that chapter's purpose, which is to inform the public and its elected representatives about "sponsors of campaigns and lobbying efforts which seek to affect, directly or indirectly, governmental decision making."[9] We also consider the Public Disclosure Act's declaration of policy, which states the following:

> *The provisions of this chapter shall be liberally construed* to promote complete disclosure of all information *respecting the financing of political campaigns and lobbying,* and . . . full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected.

RCW 42.17.010(11) (emphasis added).

The statute at issue, RCW 42.17.200, dictates that a person is a sponsor of a grass roots lobbying campaign if: (1) the program presented is addressed to the public, and (2) a substantial portion of the program is intended primarily to influence legislation.

## I
## PUBLIC

There is no question that Peacock's efforts are addressed to the public. In addition to gathering signatures, his Committee distributes brochures that solicit volunteer help and monetary contributions from the public.

## II
## LEGISLATION

Peacock asserts, however, that his petitioning efforts

---

[8]*Hartman v. Washington State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975) (citing *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972)).

[9]*Young Americans For Freedom, Inc. v. Gorton,* 83 Wn.2d 728, 733, 522 P.2d 189 (1974); *see also State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 509, 546 P.2d 75 (1976).

are not an attempt to impact legislation because no legislation regarding the creation of Cedar County is pending or has been proposed. He cites *Young Americans For Freedom, Inc. v. Gorton* for the proposition that compliance with the PDC is required only if there is pending or proposed legislation. That case states the following:

> Reporting would not be required when the subject campaign does not have as its objective the support or rejection of specific legislation.[2] Thus, no reporting is required of the YAF unless it seeks to affect the disposition of *specific* pending or proposed legislation.

---

[2]We use the term 'legislation' herein generically to also include pending or proposed rules, rates, standards or proposals.[10]

The YAF engaged in campaigns that encouraged members to contact their elected representatives. It also received general dues from its members. The Supreme Court concluded that, when the YAF spends money that it received from its members, it does not have to disclose the members who contributed those funds if the funds were general membership dues rather than funds that were earmarked for a specific campaign.

 That case is distinguishable from the case at hand. As indicated by the footnote, the Supreme Court in that case was not called upon to interpret the meaning of the word "legislation" as it exists in RCW 42.17.200(1). Because that is our task, we must consider the word's full statutory meaning as set forth by the Legislature. The statutory definition of the term "legislation" refers not only to pending or proposed bills, but also to "any other matter that may be the subject of action by either house or any committee of the legislature."[11] That definition provides as follows:

> "Legislation" means bills, resolutions, motions, amend-

---

[10]*Young Americans,* 83 Wn.2d at 732 n.2.

[11]RCW 42.17.020(26).

ments, nominations, and other matters pending or proposed in either house of the state legislature, *and includes any other matter that may be the subject of action by either house or any committee of the legislature* and all bills and resolutions that, having passed both houses, are pending approval by the governor.[12]

Following the Legislature's broad definition,[13] we must conclude that the Cedar County Committee's petition-drive is directed at legislation. The Committee's hope is that its signed petitions will force the Legislature to create a new county. To do so, the Legislature will have to create and pass legislation that establishes the new county's physical boundaries and governmental structure. Because the matter of creating a new county will be the subject of future legislative action if the Committee is successful, the petition drive is directed at legislation.

### III

### INFLUENCE

Peacock next argues that the process of dividing a county is ministerial and does not involve any legislative discretion that might be subject to influence.

 The word "influence" is not defined by the statute, by Administrative Code, or by opinion. Thus, absent ambiguity, this court gives the word its plain and ordinary meaning[14] and may refer to the dictionary definition.[15] According to the dictionary, to "influence" means "to have an effect on the condition or development of: determine

---

[12]RCW 42.17.020(26) (emphasis added).

[13]*American Legion Post No. 32 v. City of Walla Walla,* 116 Wn.2d 1, 8, 802 P.2d 784 (1991) (in construing a statute, the statutory definitions generally control).

[14]*Palmer,* 82 Wn. App. at 372 (citing *Garrison v. Washington State Nursing Bd.,* 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

[15]*American Legion,* 116 Wn.2d at 8 (citing *State ex rel. Graham v. Northshore Sch. Dist. No. 417,* 99 Wn.2d 232, 244, 662 P.2d 38 (1983)).

partially."[16] This broad definition is consistent with the Legislature's intent that we construe the provisions of the Public Disclosure Act broadly to promote complete disclosure of how lobbying campaigns are financed.[17]

The Committee's petition drive, which Peacock does not deny was undertaken solely to have an effect on the development of new legislation, is nothing if it is not an effort to influence legislation. Further, the question of influence is a matter of determining whether the Committee's efforts will prompt legislative action, a matter apart from the issue of whether the resulting legislative process will be ministerial and compulsory. Thus, we do not address the Committee's argument that Washington Constitution article XI, section 3 compels the legislature to act upon receiving the requisite number of signatures.[18]

We affirm.

SEINFELD, C.J., and ARMSTRONG, J., concur.

Review denied at 131 Wn.2d 1022 (1997).

---

[16]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1160 (1969).

[17]RCW 42.17.010(10).

[18]CONST. art. XI, § 3 states in pertinent part the following:

"There shall be no territory stricken from any county unless a majority of the voters living in such territory shall petition therefor and then only under such other conditions as may be prescribed by a general law applicable to the whole state."