[No. 26832-9-II. Division Two. March 8, 2002.]

WASHINGTON INDEPENDENT TELEPHONE ASSOCIATION, ET AL., *Appellants*, v. THE WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, *Respondent*.

500

502

*Richard A. Finnigan*, for appellants.

*Judith A. Endejan* (of *Graham & Dunn, P.C.*); and *Christine O. Gregoire, Attorney General*, and *Shannon E. Smith, Assistant*, for respondent.

Hunt, J. — Washington Independent Telephone Association (WITA) appeals the superior court's denial of its petition for review of Washington Utilities and Transportation Commission's (WUTC) designation of U.S. Cellular Corporation (USCC) as an additional "eligible telecommunications carrier" (ETC) in several rural service areas already served by WITA members. We hold that (1) the WITA members have no constitutionally protected status as exclusive providers for their present service areas and (2) WUTC's designation of USCC as an ETC meets the requisite legal criteria. We affirm.

## FACTS

### I. Historical Background

Since Congress enacted the Communications Act of 1934, a basic goal of federal telecommunications regulation has been "universal service"—"world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151 (1994).

■ Congress enacted the Telecommunications Act of 1996 to prohibit states from hindering competitive entry into local telecommunications markets. 47 U.S.C. § 253. One of the purposes of this Act was to promote universal service so that low-income and rural consumers can have available telecommunications and information services comparable to those of urban consumers at comparable rates. *See* 47 U.S.C. § 254(b)(3). The Act mandated that telecommunications providers contribute to a federal universal service fund on an equitable and nondiscriminatory basis. 47 U.S.C. § 254(b)(4). This fund provides federal universal service support[1] to eligible providers in rural and other high-cost areas.

### II. ETC Designations

Competitive, licensed, telecommunications providers may offer telecommunication services in any given geographic area. But state commissions designate which of those providers qualify as ETCs, eligible to receive money from the federal universal service fund. 47 U.S.C. § 214(e). Any carrier that receives such ETC support must provide services specified by the Federal-State Board on Universal Service.[2] In addition, before designating more than one

---

[1] "Federal universal service support" is subsidized financial support distributed from the Universal Service Fund, "a cost allocation mechanism [under the direction of the Federal Communications Commission (FCC),] designed to keep local exchange rates at reasonable levels especially in high cost (i.e. rural) areas." *See* Newton's Telecom Dictionary 728 (14th ed. 1998).

[2] The services are listed at 47 C.F.R. § 54.101.

ETC in a rural area, the commission must find that such an addition is "in the public interest." 47 U.S.C. § 214(e)(2).

During October 1997, many Washington telecommunications companies, including the WITA companies[3] here and USCC,[4] petitioned WUTC for designation as ETCs under 47 U.S.C. § 214(e). WUTC considered each of these petitions at open public meetings on November 26 and December 10, 1997.[5]

On December 23, 1997, WUTC designated companies as ETCs[6] for their respective service areas.[7] In this initial ETC Order, WUTC designated USCC as an ETC in 10 exchanges.[8] WUTC designated the nonrural companies as ETCs for the exchange areas in which they provided ser-

---

[3] The WITA companies are those rural local telephone companies (telcos) who protested the designation, filing the Motion to Dismiss and the Protest. WITA is a trade association of independent telephone companies.

[4] USCC affiliates are wireless carriers holding cellular licenses. WUTC does not regulate wireless carriers. *See* RCW 80.66.010. But federal law directs WUTC to determine whether a carrier, including a wireless carrier, qualifies for designation as an ETC. *See* 47 U.S.C. § 214(e)(2); *see also* Admin. R. at 24.

[5] At that time, WITA contended that ETC designation was "licensing" under the state Administrative Procedure Act (APA), chapter 34.05 RCW, and, thus, WUTC must conduct a formal adjudicatory hearing before modifying any such "license."

WUTC concluded there was no need for an "adjudicative proceeding" under the state APA, rejecting that granting ETC designation was "licensing" and concluding that, even if it were, the ETC designation at issue was an initial "license," not a "modification," and, therefore, did not fall under our APA.

[6] *In re Petitions for Designation as an Eligible Telecomms. Carrier*, WUTC Nos. UT-970333-54 and 970356, Order Designating Eligible Telecommunications Carriers (Dec. 23, 1997) (Initial ETC Order).

[7] Under the Act, a rural company's "service area" is that company's "study area," unless and until the FCC and the state commission establish a different service area for that company. 47 U.S.C. § 214(e)(5). For rural companies providing service in a single exchange, WUTC designated those companies as ETCs for their respective exchanges.

[8] An "exchange" is a unit established by a telecommunications company for service in a specific geographic area, which usually embraces a city, town, or community and its surrounding area. An exchange consists of one or more central offices, together with the facilities used to provide service within that area. WAC 480-120-021.

vice. WUTC designated rural companies serving multiple exchanges as ETCs for their respective study areas.[9]

On August 14, 1998, WUTC and many rural companies, including the petitioner companies here, asked the Federal Communications Commission (FCC) to concur in WUTC's establishment of the ETC service areas, rather than their study areas, as the companies' respective exchange areas.[10] On September 9, 1999, the FCC granted WUTC's and rural companies' petition to designate the individual exchanges of the rural companies as their service areas for purposes of their ETC status.

### III. CHALLENGE TO ETC DESIGNATIONS

On December 7, 1999, USCC petitioned WUTC to amend its ETC status designation (Petition to Amend) to add 72 exchanges, seeking ETC designation for most USCC service areas in Washington State.[11] This petition was the first effort by a Washington carrier to seek status as an additional ETC in many rural areas already served by exclusive rural telephone companies, previously designated as ETCs.

WUTC included USCC's Petition to Amend in its publicly available Report of Filings Received, but WUTC did not serve the WITA companies with a copy of the petition. WUTC placed USCC's Petition to Amend on its publicly available agenda for consideration at its December 29, 1999, regularly scheduled, open, public meeting. Counsel for the WITA companies learned of the filing from WUTC's

---

[9] A "study area" is commonly known as an incumbent local exchange company's existing service area; it generally includes all of the exchanges in which the company provides service in the state. Study area boundaries were fixed as of November 15, 1984. *See Fed.-State Joint Bd. on Universal Serv.*, 12 F.C.C.R. 8776, 8872 n.434 (1997) (report and order).

[10] *See Petition for Agreement with Designation of Rural Co. Eligible Telecomms. Carrier Serv. Areas & for Approval of the Use of Disaggregation of Study Areas for the Purpose of Distrib. Portable Fed. Universal Serv. Support*, 15 F.C.C.R. 9921 (1999) (mem. op. and order) (FCC Service Area Order).

[11] Specifically, USCC requested WUTC designate it as an ETC in all of the exchanges in the state of Washington in which USCC provides service.

report of filings; he received a copy of the petition around December 14, 1999.[12]

On December 20, 1999, USCC asked WUTC to take action on its Petition to Amend by December 31, 1999, so that USCC would not lose federal universal service funding for the new areas for which it sought ETC designation.[13] On December 28, 1999, the WITA companies moved to dismiss USCC's petition, arguing that (1) USCC is not a common carrier; (2) rather, it is the holding company that owns common carriers; and (3) therefore, USCC was not eligible for ETC designation. The WITA companies also protested USCC's petition on grounds that it did not meet the statutory requirements for ETC designation set forth in 47 U.S.C. § 214(e). USCC responded to the WITA companies' motion to dismiss and the protest.

WUTC staff recommended granting USCC's petition. Specifically, a four-page report by Mr. Bob Shirley, a regulatory consultant, (1) stated the requirement that such a designation must be found to be "in the public interest," (2) considered the pros and cons of granting the designation, (3) concluded that the designation would be "in the public interest," and (4) recommended that USCC be designated as an ETC.

Both USCC and the WITA companies appeared at WUTC's December 29, 1999 open public meeting. WUTC first addressed the issue of whether it should dismiss USCC's petition because USCC was not the formal license holder. WUTC allowed USCC to amend its petition[14] orally to add its affiliates, which technically hold the FCC li-

---

[12] The Rural Telephone Companies learned of the Petition and complained to WUTC of the failure to provide notice, protesting the Petition and filing a motion to dismiss the Petition. WUTC's report of filings and open meeting agendas are posted on its website. USCC's Amended Petition was posted to the website on December 13, 1999. WUTC's open meeting agendas also are distributed to interested persons as well as posted on WUTC's website. (Br. of Resp't at 5).

[13] Under FCC rules, universal service funding eligibility for the year 2000 would be limited to the number of lines USCC served for which it had obtained ETC status as of December 31, 1999.

[14] Amendment was through the testimony of a company representative, sworn and questioned at the meeting.

censes.[15] The WITA companies objected because they were denied the opportunity to present sworn witnesses or to cross-examine USCC's witness. WUTC denied the WITA companies' motion to dismiss.

WUTC granted USCC's petition for ETC designation, with one commissioner dissenting.[16] Thereafter, WUTC issued a Second Supplemental Order Granting Petition for Designation as ETC; WUTC explained that it was granting the Petition to Amend to implement its decision before year end and reserved for later entry an order containing formal statements of reasons. On January 27, 2000, WUTC issued its Third Supplemental Order, providing a detailed explanation and citations for its previous decision.

WITA filed an administrative appeal in Thurston County Superior Court. WITA tried to commence discovery in this action by serving notices of depositions and subpoenas on USCC, which moved to quash them. The superior court issued an Order Quashing Subpoenas and for Protective Order on July 7, 2000. Br. of Intervenor at 11. WITA filed an interlocutory appeal on the discovery issue, which our Commissioner denied.[17] WITA requested an Order to Supplement the Agency Record, which the superior court denied. The superior court also denied WITA's Petition for Review. WITA appealed.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ■ Although we review errors of law de novo, we accord substantial weight to an agency's view of the law

---

[15] This was also embodied in a formal written motion to amend filed on December 30, 1999.

[16] The Commissioners debated on the record. Chairwoman Showalter and Commissioner Hemstad agreed that an adjudicative hearing was not required and that the ETC designation was in the public interest. Commissioner Gillis dissented, concerned that the process had not allowed for a full analysis of the implications of this decision.

[17] This court denied review on October 4, 2000, *Wash. Indep. Tel. Ass'n v. WUTC*, No. 26235-5-II.

that it administers. *See Alpine Lakes Prot. Soc'y v. Dep't of Natural Res.*, 102 Wn. App. 1, 14, 979 P.2d 929 (1999); *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 801, 920 P.2d 581 (1996) (deference to agency's interpretation of statute where the agency is charged with its administration and enforcement). When the agency has expertise in a specialized field of law and has quasi-judicial functions in that field, we accord substantial weight to its construction of statutory words, phrases, and legislative intent. *Peacock v. Pub. Disclosure Comm'n*, 84 Wn. App. 282, 286, 928 P.2d 427 (1996).

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity[.]" RCW 34-.05.570(1)(a). We grant relief by altering the agency's action only if we determine that "a person seeking judicial relief has been substantially prejudiced by the action complained of." RCW 34.05.570(1)(d).

## II. DUE PROCESS

WITA claims that WUTC erred as a matter of law and violated WITA's due process rights in failing to conduct an adjudicative hearing to consider the WITA companies' protest against USCC's petition for ETC designation in rural areas where WITA companies were already operating as ETCs.

■ To determine whether a procedure has violated due process, we engage in a two-step analysis. First, we must determine whether a liberty or property interest exists entitling an individual to due process protections. *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). Second, if there exists such a constitutionally protected interest, we employ a balancing test to determine what process is due. *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 902-03, 47 L. Ed. 2d 18 (1976).

## A. Federal Law

■■ 47 U.S.C. § 214(e)(2) authorizes state commissions to designate ETC's:

A State commission shall upon its own motion or upon request designate a common carrier that meets the requirements of paragraph (1) as an eligible telecommunications carrier for a service area designated by the State commission. Upon request and *consistent with the public interest, convenience, and necessity*, the State commission may, in the case of an area served by a rural telephone company, and shall, in the case of all other areas, *designate more than one common carrier as an eligible telecommunications carrier* for a service area designated by the State commission, so long as each additional requesting carrier meets the requirements of paragraph (1). Before designating an additional eligible telecommunications carrier for an area served by a rural telephone company, the State commission shall find that the designation is *in the public interest*.

(Emphasis added.) It is this statute from which WUTC derives authority to designate ETCs in Washington State. Before making an ETC designation, WUTC must find that (1) USCC meets the qualifications for an ETC and (2) designation of an additional ETC in a rural area would be "in the public interest." The statute does *not* require WUTC to hold an adjudicative hearing before designating an ETC.[18]

WITA argues that each rural telco's[19] status as the existing, exclusive ETC for its respective service area is a "significant," protected, property interest, "conveyed to them by federal law (47 U.S.C. 214(e))." Br. of Appellant at 17. But WITA cites no authority to support this claim. Nor

---

[18] In contrast, where Congress deems a hearing necessary, it requires one. *See, e.g.*, 47 U.S.C. § 214(d) (hearing required before FCC may require a company to extend its facilities).

[19] "Telco" means "the local telephone company. Often a term of endearment. Americanism for telephone company." *See* Newton's Telecom Dictionary 711 (14th ed. 1998).

does the statute[20] or case law interpreting the purpose of universal service policies support such a contention.

Yet, contrary to WITA's contention, the plain language of 47 U.S.C. § 214(e) demonstrates that Congress contemplated more than one ETC for rural service areas. Section 214(e)(2) does not protect rural telcos from competition; on the contrary, it gives WUTC discretion to designate more than one ETC in a rural service area. Congress did not mention protecting the private interests of rural telcos, who often are "exclusive" ETCs simply by default as the sole service provider operating in a particular area. Rather, customers' interest, not competitors', should control agencies' decisions affecting universal service. *Alenco Communications, Inc. v. FCC*, 201 F.3d 608, 620 (5th Cir. 2000).[21]

Because exclusive ETC status is not a protected interest entitling the WITA companies to procedural due process under federal law, WITA's claim of denial of due process fails, and we need not reach the second (procedural) step in the federal due process analysis. Thus, we turn next to WITA's claimed violation of state procedure.

## B. State Administrative Procedure Act

■ WITA contends that, under Washington's Administrative Procedure Act (APA), ETC designation is essentially a "license," which WUTC altered without procedural due

---

[20] *See* 47 U.S.C. § 214(e).

[21] In *Alenco*, rural carriers challenged two FCC universal service orders. The court deferred to the FCC's universal service decisions, denying these challenges, stating:

The Act does *not* guarantee all local telephone service providers a sufficient return on investment; quite to the contrary, it is intended to introduce competition into the market. . . . The Act only promises universal service, and that is a goal that requires sufficient funding of *customers*, not *providers*. . . .

. . . .

. . . The purpose of universal service is to benefit the customer, not the carrier. "Sufficient" funding of the customer's rights to adequate telephone service can be achieved regardless of which carrier ultimately receives the subsidy.

*Alenco*, 201 F.3d at 620-21 (footnote omitted).

process. Br. of Appellant at 17-18. If any statute requires the "approval," "registration," or "similar form of authorization" of the agency, a license "required by law" may be found within the meaning of the APA. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 801. But such is not the case here.

There are exceptions to the statutory definition of "license." Under RCW 34.05.010(9)(a), " '[l]icense' means a franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law, but *does not include (i) a license required solely for revenue purposes*[.]" (Emphasis added.) Even were we to assume that an ETC "designation" was similar to a "license," it still would not be a "license" under this statute, because the sole purpose of the ETC designation is to entitle the carrier to receive federal universal service revenues. Therefore, WITA's argument also fails under state law.

### III. APA Standing

The complaining party must have standing under RCW 34.05.530 to bring an appeal under Washington's APA:

[A] person has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency action. A person is aggrieved or adversely affected within the meaning of this section only when all three of the following conditions are present:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

These three conditions derive from federal case law. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 793. The first

and third conditions are often called the "injury-in-fact" requirement, and the second condition is known as the "zone of interest" test. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 794.[22]

## A. "Injury in Fact"

The Supreme Court of Washington has stated its intent to follow the United States Supreme Court, which "routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy" the injury-in-fact requirement. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 795.

The *Seattle Building & Construction Trades Council* case involved the Washington State Apprenticeship and Training Council's designation of the Construction Industry Training Council's apprenticeship program as an approved program, over the protest of Seattle-King County Building and Construction Trades Council (SKCBCTC), which ran an existing, approved program. The Court found that the SKCBCTC met the test for "injury-in-fact" because

> [e]xisting programs have an interest in contesting what they believe to be inadequate standards in order to prevent entry of new, substandard programs into the market which will deplete . . . opportunities . . . of existing programs . . . . [A]dditional programs will mean more competition . . . thus, they have an interest in assuring the competition is on a level field, i.e., only programs complying with statutory and regulatory requirements will obtain . . . approval.

*Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 796. By analogy, WITA (on behalf of the WITA companies) has similarly alleged injury in fact.

---

[22] The court then stated, "Not only are these particular provisions drawn largely from federal case law, the APA expressly states the Legislature's intent that 'courts should interpret provisions of this chapter consistently with decisions of other courts interpreting similar provisions of . . . the federal government . . . .' RCW 34.05.001." *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 794 (alterations in original).

Before WUTC designated USCC as an additional ETC for certain service areas, each WITA rural telcos was the sole ETC designee for its rural service area. WUTC's addition of another ETC into those areas changed the rural telcos' status, as well as their competitive environment. WITA complains that (1) USCC may not meet the statutory requirements for an ETC and (2) its designation as an additional ETC may deplete the universal funds available to the existing ETCs, such that the existing rural telcos may not remain viable. Br. of Appellant 29-34. Under the reasoning of *Seattle Building & Construction Trades Council*, the WITA companies, as USCC's competitors, meet the burden of showing injury in fact.

## B. "ZONE OF INTEREST"

The second condition of RCW 34.05.530 involves the "zone of interest" test, which "limit[s] review to those for whom it is most appropriate." *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 797 (citing William R. Andersen, *The 1988 Washington Administrative Procedure Act—An Introduction*, 64 WASH. L. REV. 781, 824-25 (1989)). The test focuses on whether the Legislature intended the agency to protect the party's interest when taking the action at issue. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 797.

In *Seattle Building & Construction Trades Council*, the court found that the Apprenticeship Council was required to consider competitors' interests because the statutory and regulatory schemes contemplated that new programs must match the standards of existing programs. Also, the legislature directed the Council to register apprenticeship agreements that were "in the best interests of the apprentices." The court ruled that it was in the apprentices' best interests to be treated fairly and uniformly. *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 798. The court further stated, "We also note that granting standing to competitors helps assure judicial review." *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 798.

Similarly here, the federal statute directed WUTC to designate additional ETCs in rural areas if (1) the requesting carrier met the *requirements for an ETC* and (2) the designation was found to be *in the public interest*. *See* 47 U.S.C. § 214(e)(2). Adopting the reasoning of *Seattle Building & Construction Trades Council*, we hold that WITA is within the zone of interest because (1) WITA's companies are USCC's competitors, (2) granting standing to a competitor provides for judicial review, (3) the statute required WUTC to consider the best interests of the public, and (4) it is in the public's best interests to be treated fairly and uniformly, as ensured by establishing uniform requirements for all ETC competitors. Thus, WITA meets the "zone of interest" test.

Under the Washington APA, WITA has met the "harm in fact" and "zone of interest" requirements and, thus, has standing to appeal WUTC's action.

### IV. ETC DESIGNATION NOT UNCONSTITUTIONAL

 This case involves "other agency action" under Washington's APA. *See* RCW 34.05.010(3). RCW 34.05.570-(4) provides in pertinent part that:

> (b) A person whose rights are violated by an agency's failure to perform a duty that is required by law to be performed may file a petition for review pursuant to RCW 34.05.514, seeking an order pursuant to this subsection requiring performance. . . .
>
> (c) Relief for persons aggrieved by the performance of an agency action, including the exercise of discretion . . . can be granted only if the court determines that the action is:
>
> (i) Unconstitutional;
>
> . . . .
>
> (iii) Arbitrary or capricious[.]

WITA contends that the superior court erred by denying its Petition for Review of WUTC's action because WUTC (1) failed to find that designating USCC as additional ETC was "in the public interest" and (2) granted the ETC designa-

tion without establishing that USCC met the statutory requirements. WITA argues that WUTC's actions were therefore unconstitutional, or arbitrary or capricious.

■■■■ We apply the Washington APA standards directly to the record that was before the agency, here, WUTC. *Peacock v. Pub. Disclosure Comm'n*, 84 Wn. App. 282, 286, 928 P.2d 427 (1996).

### A. "Public Interest"

■■■■■ Although WITA is entitled to prevent WUTC from exercising discretion arbitrarily and capriciously, it is not entitled to have the agency exercise discretion in WITA's favor. *See Wilson v. Nord*, 23 Wn. App. 366, 376, 597 P.2d 914 (1979). The arbitrary and capricious standard is very narrow, and the one asserting it carries a heavy burden. *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 658 P.2d 648 (1983). Arbitrary and capricious action is

> "willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached."

*Pierce County Sheriff*, 98 Wn.2d at 695 (quoting *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980)).

WITA argues that WUTC did not adequately consider whether designating USCC as an ETC was in the public interest. Br. of Appellant at 35-45. WITA contends that WUTC's determination of "public interest" must be based solely on principles for universal service, articulated in 47 U.S.C. § 254(b), including: (1) quality and rates, (2) access to advanced services, and (3) access in rural and high cost areas. But WITA does not meet its burden of showing that WUTC did not consider these factors or that WUTC made its decision based on factors that conflict with this legislative intent.

Courts must give substantial deference to a regulatory agency's judgment about how best to serve the public interest. *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596, 101 S. Ct. 1266, 67 L. Ed. 2d 521 (1981) (the weighing of policies under the "public interest" standard is a task Congress delegated to the FCC in the first instance). The FCC has ruled that competition must be weighed equally with universal service in determining the public interest in rural areas. *Fed.-State Joint Bd. on Universal Serv.*, 12 F.C.C.R. 8776, 8802-03 (1997) (rejecting assertion that competitive neutrality is inconsistent with section 254).

The record supports WUTC's finding of "public interest" in its designation of USCC as an ETC. WUTC considered (1) a four-page report by Regulatory Consultant, Bob Shirley, concluding that this designation would be "in the public interest"; (2) USCC's Petition to Amend; (3) the WITA's companies motion to dismiss and protest and USCC's Response; (4) both USCC's and WITA's comments at the open meeting on December 29, 1999; and (5) USCC's request that WUTC take action by December 31, 1999. Although one commissioner voted against USCC's ETC designation, WUTC's majority conclusion, that granting the petition would be in the public interest, came after the Commissioners debated on the record.

We hold, therefore, that WUTC did not fail to perform its duty; rather, it found that the ETC designation was "in the public interest," a decision entrusted to WUTC by law.

## B. Statutory Requirements

WITA claims that USCC does not meet the statutory requirements of an ETC and, thus, WUTC violated the statute by so designating USCC. Br. of Appellant at 10-11. The requirements for ETC designation are set forth in 47 U.S.C. § 214(e): An ETC must (1) be a common carrier, (2) provide services over facilities it owns, and (3) provide

services supported by universal service.[23] *See* 47 U.S.C. § 214(e)(1) and (2).

USCC is a common carrier. A "common carrier" is a person who provides telecommunications for hire. *See* 47 U.S.C. § 153(10). USCC is either the majority owner or sole owner of the entities that hold the wireless licenses. USCC owns the facilities over which the telecommunications services are provided.[24] Also, WUTC permitted USCC to amend its petition to include the underlying license holders. Therefore, USCC and its affiliates constitute a common carrier.

WUTC is authorized to waive requirements that a company provide toll limitation and enhanced 911 services, and it waived those requirements for USCC.[25] 47 C.F.R. § 54-.101(c). USCC provides or has received waivers for the services supported by universal service.[26] USCC provides seven of the nine services required for an ETC under the statute;[27] it received waivers for the other two services. Thus, the administrative record shows that USCC met the statutory requirements for ETC designation. Therefore, WUTC's designation of USCC as an ETC was neither unconstitutional nor arbitrary and capricious.

---

[23] The services supported by universal service include: (1) voice grade access to the public switched telecommunications network; (2) local usage; (3) dual tone multi-frequency signaling, or its equivalent; (4) single-party service, or its equivalent; (5) access to emergency services, such as 911; (6) access to operator services; (7) access to interexchange service; (8) access to directory assistance; and (9) toll limitation for qualifying low-income customers. *See* 47 C.F.R. § 54.101.

[24] USCC's Petition for Designation stated that it will provide service as an ETC through a combination of its own cellular antennas, towers, and mobile switching offices, as well as through the interconnection of its facilities with landline telecommunications companies.

[25] 47 C.F.R. § 54.101(c) states that "[s]tate commissions *should grant* such a [waiver] request *only upon a finding that exceptional circumstances* prevent an otherwise eligible telecommunications carrier from providing [the services]." (Emphasis added.) However, USCC's request that WUTC take action prior to December 31, 1999, so that USCC would not lose federal universal service funding, would support that WUTC did consider whether special circumstances existed.

[26] See *supra* n.23 for list of services required by 47 C.F.R. § 54.101.

[27] USCC does not provide toll limitation and enhanced 911 services.

V. DENIAL OF DISCOVERY ON APPEAL

 The WITA companies filed a petition for review in superior court and sought discovery. The lower court entered an Order to Quash the subpoena that the WITA companies issued. We review the superior court's refusal to allow WITA to engage in discovery for abuse of discretion. *See, e.g., Penberthy Electromelt Int'l, Inc. v. U.S. Gypsum Co.*, 38 Wn. App. 514, 521, 686 P.2d 1138 (1984).

 Under Washington's APA, judicial review is limited to the agency record.[28] RCW 34.05.558. A court may take evidence in addition to the agency record only if it relates to the validity of the agency action and is needed to decide disputed issues regarding improper agency action, unlawfulness of procedure, or material facts not required to be determined on the agency record. *See* RCW 34.05.562(1). In addition, a party seeking discovery must first ask the court's permission. RCW 34.05.566(6).

WUTC's decision about whether to conduct an adjudicative proceeding was discretionary; WITA had no constitutional or statutory right to such a proceeding. RCW 34.05.413. WUTC also had discretion as to whether to accord ETC status to USCC. 47 U.S.C. § 214(e). Therefore, WITA was entitled to additional discovery only at the trial court's discretion. The trial court did not abuse its discretion by refusing to allow WITA to engage in discovery or by limiting its review to the administrative record before it.

Affirmed.

ARMSTRONG, C.J., and BRIDGEWATER, J., concur.

Review granted at 147 Wn.2d 1008 (2002).

---

[28] The agency record is described in RCW 34.05.566(1).