IN RE APPLICATION NO. C-1889 OF GCC LICENSE
CORPORATION (WESTERN WIRELESS).
STATE OF NEBRASKA, PUBLIC SERVICE COMMISSION, APPELLEE, V.
ARLINGTON TELEPHONE COMPANY ET AL.,
INTERVENORS-APPELLANTS, AND ARAPAHOE TELEPHONE
COMPANY ET AL., INTERVENORS-APPELLEES.
647 N.W.2d 45

Filed June 28, 2002.    No. S-01-343.

Kelly R. Dahl and John W. McMullen, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellants.

Steven G. Seglin, of Crosby Guenzel, L.L.P., and Mark J. Ayotte and Philip R. Schenkenberg, of Briggs and Morgan, P.A., for appellant GCC License Corporation (Western Wireless).

Don Stenberg, Attorney General, and L. Jay Bartel for appellee Nebraska Public Service Commission.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

GCC License Corporation is a wholly owned subsidiary of Western Wireless Corporation, doing business in Nebraska as Cellular One (Western Wireless). It was designated by the Nebraska Public Service Commission (PSC) as an eligible telecommunications carrier (ETC) under 47 U.S.C. § 214(e)(2) (Supp. V 1999), part of the federal Telecommunications Act of 1996. Designation as an ETC makes a company eligible for state and federal funding to ensure that all consumers have access to affordable telephone service, a concept that is generally referred to as "universal service." See, e.g., *Alenco Communications, Inc. v. F.C.C.*, 201 F.3d 608 (5th Cir. 2000). The appellants are rural Nebraska telephone companies who intervened in the PSC action to contest the designation of Western Wireless as an ETC.

The appellants contend that to receive ETC designation, Western Wireless had to prove that the designation would be in the public interest under 47 U.S.C. § 214(e). They argue that the PSC was required to engage in rulemaking to define the term "public interest." They also argue that even if rulemaking is not required, the PSC adopted the wrong test to define the public

interest and that the designation of Western Wireless as an ETC was not supported by the evidence. They further argue that the PSC, by certifying Western Wireless' ETC status to the Federal Communications Commission (FCC) after an appeal was filed, violated a stay provision in Neb. Rev Stat. § 75-134(3) (Cum. Supp. 2000).

We determine that rulemaking was not required and that Western Wireless met its burden of proof that it was eligible for ETC designation. We affirm.

## BACKGROUND

### APPLICATION PROCEEDINGS

In August 1998, Western Wireless applied for designation as an ETC in multiple service areas, and the appellants intervened. A hearing was held on the application in October 1999. All parties provided evidence regarding the definition of public interest and whether designation of Western Wireless as an ETC was in the public interest.

Gene DeJordy, an attorney and Western Wireless' representative on a rural task force established by the "Federal-State Universal Service Joint Board," testified for Western Wireless as follows: He stated that the federal Telecommunications Act of 1996 and the Nebraska Telecommunications Universal Service Fund Act established a mechanism to achieve a competitive universal service market by bringing the benefits of competition to rural areas. The acts allow incumbent local exchange carriers, as well as competitive carriers, to enter universal service market areas by seeking ETC status. He testified that Western Wireless was capable of offering universal service to rural customers if it was given ETC status. Western Wireless met all of the criteria for ETC designation, including the ability to offer required supported services, such as access to required emergency services.

Western Wireless planned to implement a universal service offering through the use of wireless local loop technology. Using this system, customers would use a wireless system for their home telephone that would be compatible for use with computers and fax machines. DeJordy explained that wireless loop technology has a more powerful output than a handheld wireless telephone and that the quality of service with a wireless

loop system was equal to, or better than, a landline system. He conceded that terrain could cause a signal to be unavailable to a handheld cellular telephone in certain areas, but indicated that the stronger signal of the wireless loop system would generally prevent that problem. He also stated that a signal could be optimized at a location by using antennas. Additional cellular sites would be constructed to make service available to all areas if necessary. He conceded that the wireless loop service would not likely be installed in hospitals because the antenna would have to be placed outside instead of inside where it could affect medical devices.

DeJordy further testified that Western Wireless would offer the services at a fixed monthly rate similar to what was offered by the incumbent telephone companies. Western Wireless would also provide an expanded local calling area. According to DeJordy, some customers would likely keep their service with the incumbent local carrier, but would use Western Wireless' services as a second telephone line instead of seeking two lines with the incumbent carrier.

DeJordy testified that designation of Western Wireless as an ETC was in the public interest by providing rural customers with a choice between service providers. Western Wireless would provide a new and innovative service with some extra features such as 24-hour customer service, some mobility of the telephone, and expanded local calling areas. Western Wireless did not provide an economic study regarding the impact a second ETC would have on incumbent rural telephone carriers.

Cynthia Bittinger, the secretary-treasurer for a local exchange carrier, testified on behalf of the appellants. She testified as follows: Western Wireless had not provided enough information to show that it would support the services necessary for ETC designation and had not disclosed the prices and terms under which it would offer services. Designation of Western Wireless as an ETC was not in the public interest because it would jeopardize the ability of incumbent rural carriers to provide basic and advanced services to their customers due to lost revenues. She suggested that costs to consumers would rise because of the possibility that a universal service surcharge paid by customers would need to be increased to

support multiple ETC's in rural areas. Bittinger expressed doubt that the economy of rural areas could support two ETC's, especially if the fund had to be adjusted for consumers who carried lines with both carriers. She knew of customers who had experienced dead spots in her area where they were unable to receive a signal when using conventional mobile cellular services provided by Western Wireless.

Steven Watkins, a consultant and attorney, testified for the appellants as follows: Western Wireless had failed to provide sufficient detail regarding the terms and conditions under which it would offer or provide universal service in a manner that would satisfy the conditions necessary for ETC designation. Designation of Western Wireless was not in the public interest because if the funds available were diluted due to multiple ETC's, all the carriers might be prevented from upgrading services in high cost areas and rural customers might be subjected to higher rates. He believed that Western Wireless did not have the capacity to serve all the customers in an area as a carrier of last resort. On cross-examination, he stated his disagreement with existing federal rules and admitted that he believed it would never be in the public interest to designate an additional ETC in a rural telephone company area.

Donald Macke, an economist and the executive director of the Nebraska Rural Development Commission, reviewed Western Wireless' application for ETC designation and wrote a detailed report of his findings. Based on standards used to determine whether to assist development projects, Macke testified that it was not in the public interest to designate Western Wireless as an ETC because the ability of rural markets to support a single provider was in question and they could not support multiple providers.

Barbara Wilcox, the director of product and market issues for U S West Communications, Inc., testified that Western Wireless' services might not be affordable to all customers. She testified that Western Wireless should be required to file a business plan and present details regarding the costs of their services before ETC designation could be granted. She admitted that U S West Communications did not file a business plan when it was designated as an ETC.

## PSC FINDINGS

In November 2000, the PSC granted Western Wireless' application for ETC designation. In its order, the PSC stated that it must be shown by clear and convincing evidence that designation of a second ETC in a rural area is in the public interest. The PSC found that the purpose of the public interest requirement of 47 U.S.C. § 214(e) was not to protect rural telecommunications companies from competition but to ensure that rural areas receive the same benefits as urban areas. The PSC determined that the public interest requirement is centered on a threshold issue of whether a proposed application has defined its service area reasonably enough to prevent " 'cherry picking' " of desirable customers by incoming ETC's. The PSC determined that the designated service area was large enough to prevent cherry-picking. The PSC then determined that Western Wireless also offered additional benefits to the public interest such as an expanded calling area and mobility.

The PSC found the report written by Macke to be unpersuasive. The PSC found that the report suggested that it should consider the ability of Western Wireless to provide high quality voice, video, and data services as part of the public interest test and suggested that comparisons of capability should be made with existing rural telecommunications providers. The PSC found that there was no basis in law for these suggestions. The PSC also made note of an admission in the report that Macke lacked the expertise to evaluate the capabilities of wireless technology.

The PSC determined that Western Wireless had provided sufficient and credible evidence that it was willing and capable to provide the services required by federal law. The PSC determined that federal law did not require that the services should already be offered and was more concerned with whether the carrier was willing to provide them. Because the PSC determined that Western Wireless was willing to offer the required services and that designation of Western Wireless as an ETC was in the public interest, it granted the application.

The appellants moved for reconsideration. In their motion, the appellants stated that in a posthearing brief, they (1) "suggested that adopting standards to define the 'public interest' might require a rulemaking prior to proceeding with the Application";

(2) alleged that the PSC had inappropriately adopted a new public interest standard; (3) alleged that rulemaking was required; (4) alleged that they were denied due process; and (5) alleged that the PSC applied the wrong criteria to determine the definition of public interest. After a hearing, the motion for reconsideration was denied.

The appellants filed a notice of appeal on March 19, 2001. On March 29, the PSC certified to the FCC that Western Wireless had been designated as an ETC. The PSC informed the FCC that a notice of appeal had been filed and that the appellants were contending that the notice of appeal held the order granting ETC status in abeyance under Nebraska law. The PSC informed the FCC that oral arguments would be held regarding the effect of the notice of appeal and that the PSC would inform the FCC of any additional findings on the subject. The PSC informed the FCC that if the designation as an ETC was not modified or held in abeyance by the Nebraska courts, that Western Wireless would be eligible to receive federal universal service funding.

On April 12, 2001, the appellants filed a motion for emergency relief and to compel compliance with § 75-134(3), arguing that under § 75-134, the order of the PSC was held in abeyance while the appeal was pending. The appellants requested that this court order the PSC and Western Wireless to honor the stay imposed by § 75-134. Western Wireless responded that the PSC stated in its order that the order constituted a certificate of ETC designation and that § 75-134 does not hold in abeyance an order authorizing the issuance of a certificate. This court overruled the motion.

## ASSIGNMENTS OF ERROR

The appellants assign, consolidated and rephrased, that the PSC erred by (1) adopting a public interest test without complying with rulemaking provisions of the Administrative Procedure Act, (2) depriving them of due process by conducting a hearing before determining public interest criteria, (3) applying the wrong standards to define the term public interest, (4) determining that Western Wireless had met its burden of proof for ETC designation, (5) altering their service areas, and (6) implementing its order after an appeal was filed.

## STANDARD OF REVIEW

■ The appropriate standard of review for appeals from the Nebraska Public Service Commission is a review for errors appearing on the record. *Nebraska Pub. Serv. Comm. v. Nebraska Pub. Power Dist.*, 256 Neb. 479, 590 N.W.2d 840 (1999).

■ When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ Statutory interpretation presents a question of law. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Smeal v. Olson*, 263 Neb. 900, 644 N.W.2d 550 (2002).

## ANALYSIS

### RULEMAKING

The appellants contend that the PSC was required to engage in rulemaking under the Administrative Procedure Act to determine the definition of "public interest" found in 47 U.S.C. § 214(e), which provides:

**Provision of universal service**

**(1) Eligible telecommunications carriers**

A common carrier designated as an eligible telecommunications carrier under paragraph (2), (3), or (6) shall be eligible to receive universal service support in accordance with section 254 of this title and shall, throughout the service area for which the designation is received—

(A) offer the services that are supported by Federal universal service support mechanisms under section 254(c) of this title . . . and

(B) advertise the availability of such services and the charges therefor using media of general distribution.

**(2) Designation of eligible telecommunications carriers**

A State commission shall upon its own motion or upon request designate a common carrier that meets the requirements of paragraph (1) as an eligible telecommunications

carrier for a service area designated by the State commission. Upon request and consistent with the public interest, convenience, and necessity, the State commission may, in the case of an area served by a rural telephone company, and shall, in the case of all other areas, designate more than one common carrier as an eligible telecommunications carrier for a service area designated by the State commission, so long as each additional requesting carrier meets the requirements of paragraph (1). Before designating an additional eligible telecommunications carrier for an area served by a rural telephone company, the State commission shall find that the designation is in the public interest.

Section 214(6) provides authority for the FCC to designate an ETC using identical criteria when an area does not fall under the jurisdiction of a state commission.

Neb. Rev. Stat. § 75-110 (Reissue 1996), pertaining to the PSC, provides:

The Public Service Commission shall adopt and promulgate rules and regulations for the government of its proceedings, including rules of procedure for notice and hearing. The commission shall adopt and promulgate rules and regulations which the commission deems necessary to regulate persons within the commission's jurisdiction. The commission shall not take any action affecting persons subject to the commission's jurisdiction unless such action is taken pursuant to a rule, regulation, or statute.

The Nebraska Telecommunications Universal Service Fund Act provides: "The commission shall determine the standards and procedures reasonably necessary, adopt and promulgate rules and regulations as reasonably required, and enter into such contracts with other agencies or private organizations or entities as may be reasonably necessary to efficiently develop, implement, and operate the fund." Neb. Rev. Stat. § 86-1406 (Reissue 1999).

■ In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002); *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

Here, the PSC was required to determine the meaning of the term "public interest" as used in 47 U.S.C. § 214(6). Section 75-110 requires the PSC to promulgate rules only for the government of its proceedings, including rules of procedure for notice and hearing and rules which the commission considers necessary to regulate persons within its jurisdiction. We read nothing in § 75-110 that requires the PSC to engage in rulemaking when defining terms in a federal statute unless the PSC first considers that such action is necessary. Indeed, § 75-110 allows the PSC to take any action pursuant to a statute. Likewise, nothing in § 86-1406 requires the PSC to engage in rulemaking to interpret federal law in conjunction with the administration of the Nebraska Telecommunications Universal Service Fund.

The appellants argue, however, that the definition of a "rule" in Neb. Rev. Stat. § 84-901 (Reissue 1999) requires the PSC to engage in rulemaking. They also point to an instance in another context in which the PSC engaged in rulemaking to define the "public interest." Section 84-901 defines a rule or regulation in part as:

> (2) Rule or regulation shall mean any rule, regulation, or standard issued by an agency, including the amendment or repeal thereof whether with or without prior hearing and designed to implement, interpret, or make specific the law enforced or administered by it or governing its organization or procedure.

Although § 84-901 states that a rule may include a standard designed to interpret law, it provides a definition only of the term "rule" and does not create any affirmative duties for the PSC to engage in rulemaking when interpreting a federal statute. That the PSC is allowed to engage in rulemaking when it considers it to be necessary and that a rule is allowed to encompass interpretation of law does not impose any affirmative rulemaking requirement. Here, the PSC did not consider it necessary to engage in rulemaking to interpret the meaning of the term "public interest." The PSC was not required to engage in rulemaking to reach that determination. The appellants' assignment of error is without merit.

## DUE PROCESS

The appellants next contend that they were denied due process because the PSC announced a rule regarding public interest without first notifying them regarding what that rule was.

The first step in a due process analysis is to identify a property or liberty interest entitled to due process protections. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). If a significant property interest is shown, due process requires notice and an opportunity to be heard that is appropriate to the nature of the case. See *Prime Realty Dev. v. City of Omaha*, 258 Neb. 72, 602 N.W.2d 13 (1999).

The Washington Court of Appeals recently held that ETC status is not a protected interest that entitles incumbent telephone companies to procedural due process under federal law. *WITA v. WUTC*, 110 Wash. App. 498, 41 P.3d 1212 (2002). The Washington Court of Appeals noted that the language of 47 U.S.C. § 214 does not protect incumbent telephone carriers from competition. Rather, the customers' interests, instead of the competitors' interests, control an agency's decision under the act. Thus, the court reasoned, an incumbent carrier did not have a constitutionally protected interest in the designation of another carrier as an ETC.

We agree with the reasoning of the Washington Court of Appeals. Section 214(e)(2) gives a state commission discretion to designate more than one ETC in a rural service area. *Id.* The Telecommunications Act does not mention protecting the private interests of incumbent rural carriers, who are often exclusive ETC's simply by default as the sole service provider operating in a particular area. *Id.*

Because exclusive ETC status is not a protected interest entitling incumbent rural carriers to procedural due process under federal law, the appellants' due process claim is without merit. We need not reach the second step in the analysis. See *id.*

## APPLICATION OF PUBLIC INTEREST TEST

The appellants contend that the PSC applied the wrong factors to determine the definition of public interest. The appellants contend that the PSC should have considered the effect of a second

ETC on incumbent telephone carriers and whether the service area could support more than one ETC.

It has been stated that "[c]ourts must give substantial deference to a regulatory agency's judgment about how best to serve the public interest." *WITA*, 110 Wash. App. at 516, 41 P.3d at 1221, citing *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 101 S. Ct. 1266, 67 L. Ed. 2d 521 (1981). The U.S. Supreme Court has consistently stated that the words "public interest" in a federal regulatory statute take meaning from the purposes of the regulatory legislation. *NAACP v. FPC*, 425 U.S. 662, 96 S. Ct. 1806, 48 L. Ed. 2d 284 (1976).

The policy of Congress in creating a public interest requirement was to favor competition. See, e.g., *Alenco Communications, Inc v. F.C.C.*, 201 F.3d 608 (5th Cir. 2000); *WITA, supra.* Indeed, as one court has noted, the preamble to the Telecommunications Act states that it is " '[a]n act to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.' " *In re GCC License Corp.*, 623 N.W.2d 474, 480 (S.D. 2001), quoting Pub. Law 104-104, 110 Stat. 56 (1996).

When considering whether it was in the public interest to designate Western Wireless as an ETC in Wyoming, the FCC, acting in the absence of a state commission, noted that an important goal of 47 U.S.C. § 214 is to open local telecommunications markets to competition. *In the Matter of Federal-State Joint Board on Universal Service*, 16 F.C.C.R. 48 (2000). The FCC stated that competition benefits consumers in rural and high cost areas by increasing customer choice, innovative services, and new technologies. The FCC rejected the argument that rural areas are not capable of sustaining competition for universal service support. In particular, the FCC stated:

> We do not believe that it is self-evident that rural .telephone companies cannot survive competition from wireless providers. Specifically, we find no merit to the contention that designation of an additional ETC in areas served by rural telephone companies will necessarily create incentives to reduce investment in infrastructure, raise

rates, or reduce service quality to consumers in rural areas. To the contrary, we believe that competition may provide incentives to the incumbent to implement new operating efficiencies, lower prices, and offer better service to its customers.

16 F.C.C.R. at 57. The FCC, however, did not rule out considering evidence that a particular area could not sustain two ETC's.

The FCC also allowed additional factors to be taken into consideration such as whether consumers would be harmed, whether they would be adequately served should the incumbent telephone company relinquish its ETC designation, and additional benefits to consumers. *Id.* The FCC designated Western Wireless as an ETC in Wyoming, noting that it had demonstrated a commitment and ability to provide services that minimized the risk that it might not satisfy its obligations as an ETC after designation. In reaching this determination, the FCC considered that Western Wireless already provided services in 17 states and that it was not convinced that incumbent carriers would relinquish their ETC status or withdraw service if Western Wireless was designated as an ETC. The FCC further noted that as an ETC, Western Wireless would have a statutory duty to offer service to every customer within the service area. The FCC also noted additional benefits to consumers through designating Western Wireless as an ETC, such as providing a larger local calling area. *Id.*

Here, the PSC defined "public interest" in a manner that is consistent with the Telecommunications Act and considered the purpose of the act of furthering competition. The PSC also considered whether the service area was large enough to prevent harm to consumers by " 'cherry picking' " and whether Western Wireless would make additional benefits available to consumers such as mobility and an expanded local calling area. Thus, the PSC applied a definition of "public interest" that mirrors the definition applied by the FCC. In its order, and particularly in its order denying the motion for reconsideration, the PSC made clear that it considered and rejected the argument of the appellants that the rural areas in question could not support more than one ETC. Accordingly, we find no error in the PSC's definition of "public interest."

## Burden of Proof

The appellants argue that Western Wireless failed to meet its burden of proof because it showed that it was willing to provide only required services and did not present specific evidence to show that it could do so if it became a carrier of last resort.

This court reviews a decision of the PSC for errors appearing on the record. *Nebraska Pub. Serv. Comm. v. Nebraska Pub. Power Dist.*, 256 Neb. 479, 590 N.W.2d 840 (1999). Determinations by the PSC are matters peculiarly within its expertise and involve a breadth of judgment and policy determination that should not be disturbed by an appellate court in the absence of a showing that the action of the commission was arbitrary or unreasonable. See *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994).

Section 214(e) requires a carrier seeking ETC status to demonstrate that it will "offer" services required under 47 U.S.C. 254(c) (Supp. V 1999). It has been held in another case involving Western Wireless that 47 U.S.C. § 214(e) requires applicants for ETC designation to show only that they are capable of offering or providing the required services. See *In re GCC License Corp.*, 623 N.W.2d 474 (S.D. 2001). The South Dakota Supreme Court stated that under 47 U.S.C. § 214(e), a carrier designated as an ETC is eligible to receive universal service support, but ETC status does not make federal funding automatic. Thus, if a carrier wishes to receive subsidies, it must follow through on its intentions. *Id.*

Here, Western Wireless presented evidence that it was willing and able to provide all the services required by federal law. Although the appellants presented evidence to the contrary, the PSC was convinced that Western Wireless could offer the required services and that its ETC designation would be in the public interest. We determine that there was no error in the PSC's determination of this issue. Accordingly, we determine that this assignment of error is without merit.

## Alteration of Service Areas

The appellants contend that the PSC unlawfully altered their service areas. The PSC was not asked to order, and did not order, a change in the appellants' service areas. Instead, the PSC

designated Western Wireless as an ETC in each of the appellants' study areas. We have reviewed this assignment of error and find it to be without merit.

## Automatic Stay

The appellants contend that the PSC violated the stay provision in § 75-134(3). They argue that under § 75-134, the order of the PSC was held in abeyance while the appeal was pending.

■ A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Eastroads v. Omaha Zoning Bd. of Appeals,* 261 Neb. 969, 628 N.W.2d 677 (2001).

This court has previously denied a motion for emergency relief filed by the appellants regarding this issue, and we now affirm the decision of the PSC. We determine that the issue is moot, and we do not address it.

## CONCLUSION

We determine that the PSC was not required to engage in rulemaking to define the words "public interest" in 47 U.S.C. § 214(e). We also determine that the appellants were not denied due process when the PSC adopted and applied a definition of "public interest." We determine that the PSC did not err in the manner in which it defined "public interest" and in determining that Western Wireless met its burden of proof to show that it should be designated as an ETC. Finally, we determine that the PSC did not alter the appellants' service areas and that any issue regarding a stay is moot. Accordingly, we affirm.

Affirmed.